Family Talker and Mollie Murphy athlete slash cross family by Jeffrey Allen Reba. Thank you Your Honor. Good afternoon. Please counsel. This case I want to mention something that I think is at the very end of our filings. And very briefly the second appeal here that the circuit court had no jurisdiction of the matters that were taken up and I believe sort of ruled to that effect. Of course the circuit court retained jurisdiction on collateral and incidental matters if, as I understand it, they were outside the appeal. So it is our position that they were not outside the appeal and in fact in Appley's motion for clarification, which was early on, Appley acknowledged that those proceedings after the notice of appeal deal specifically with issues being addressed on the appeal. And this was the words of the Appley. I think we have some high points here we'd like to hit. First, to remind ourselves that this remand seemed somewhat limited. The things in the opinion were to review the child support in connection with gifts and bonuses, etc., and to review the maintenance in connection with the stock proceeds, and to review the attorney's fees in connection with Appley's request, I'm sorry, in the original appeal, Appelant's request to do so in connection with the lack of a 508B hearing, separate hearing on the attorney's fees. One of the issues here is the matter of income for support purposes and the extent to which attorney's fees paid by others for the gift of this car or other gifts should impact the income used as a bonus. This is a basis for calculating support. Of course, we have the Rogers case. In that regard, we would emphasize that it is our recollection that the Rogers case involved recurring annual monetary gifts, which is certainly a different circumstance than we have in this case. We have argued that providing a car is not unlike a per diem that a truck driver earns in a royals case. And the payment of attorney's fees and the provision of the car seem to be somewhat outside the traditional thought of income, where we talk about gain and profit and an increase in wealth. Here in this case, it is not like an increase in wealth, and we would urge that the court rule that now that the case is back, that these items not impact income for purposes of support. The next item we would like to discuss is the mysterious $12,000 entry that was apparently added back. It was a $12,000 entry in the books of Mr. Anderson's attorney. And that was just sort of assumed to be a payment of attorney's fees by someone other than Mr. Anderson and added back. There is really no evidence to support that other than there was that entry on his account. We think that that is going too far as far as the manifest way to the evidence is concerned. What is it that the court used to conclude that that was a gift? All that was before the court was the fact of the entry. Certainly, the employee here during the case had some obligation to present what I would call a prime official fact before there was any duty on Mr. Anderson's part to counter it. They just say, well, I think they said patented giving. So that is what it must have been. So it was added back, but only on the basis that it existed. There was no evidence about how it was paid, who paid it, and whether or not it was a gift. We think it is unfair to use that to raise income. On the 508A fees, of course, we have the 508A fees and the 508B fees and the A fees and the discretionary and the B fees are for bad things a party has done during the case. One of the reasons the case went back was because apparently those require a separate hearing. First on the 508A fees, there is an overriding item that we have argued in our brief that maybe didn't get the attention it should have or perhaps might have been overlooked. And that is, in our view of the record, we don't see any showing of need on the appellee's part here with respect to the 508A fees. The authorities say, I believe the statute says there needs to be a need or an inability to pay. And there are cases which talk about a standard of if the party had to pay them, the party requesting fees had to pay them, that it would render economic instability. Well, in this case, with the facts we have here and the relative wealth of both of these folks, once the judgment was uttered, I would think it would be very difficult to make the claim that paying her fees would render her economically unstable. On the 508B fees, which were ultimately substantial, 24169 I believe, there was no, certainly at the most very little, and we would urge that there was no specification of what conduct and which hearings were involved in connection with the court's determination of the bad conduct, so to speak, of Mr. Anderson in connection with the award of those fees. In fact, Judge Brandt made remarks about the obstreperous conduct of both parties in this case. In addition, there was an initial award of $25,000 in fees that apparently may have been a combination of 508A and 508B fees. But in any event, Appellant there, Appley here, requested that this be reversed because there had been no separate 508B hearings. And this court said, well, okay, if that's what you want. And so the $25,000 was reversed. It happens that that $25,000 had already been paid, and in Judge Brandt's analysis, Mr. Anderson never did get credit for that $25,000. Another item we'd like to draw to this court's attention is... How do you mean Mike didn't get credit? Well, it just didn't get credit. When you go through the numbers, there was no credit given for the fact that he had paid it. That I can see, your honor. I mean, on the remand, the trial court reiterated the 508B award. That was the B award. And the other one was an A award, right? The $25,000? That was the reversed one. I'm sorry? The 508A attorney's fees. That was the $25,000 from 508A, right? Well, the attorney's fees that were reversed by this court's first opinion were $25,000. He had already paid those before the appeal. Whether they were 508A or 508B is subject to argument. The problem, I think, probably is that the trial judge was making an award of 508A and 508B fees, and didn't distinguish between the two, and didn't have a separate hearing. So, I'm not sure that answers your question. Well, let me ask one. With respect to this 20, is there a dispute? In other words, whatever the attorney fees are, if ordered in the first appeal or this one, you know, the total, it goes back, to the extent you've paid some of those ordered attorney's fees, is there any dispute from the other side as to whether you're entitled to a credit? In other words, if he said you pay X dollars, the total is what your own attorney fees are. If you've already paid 25, I guess you just write a check for X minus 25K, and everybody's happy, or I guess we'll hear later from Mr. Reba whether, I mean, it seems to me that whether he's got it in order that you're entitled to a credit would seem irrelevant. If you're entitled to credit, you're entitled to credit, right? Yes. I don't believe that they have taken a position in their brief on that. I could be mistaken about that. Judge Brandt has some very well done calculation sheets, and in this whole process, we don't think we ever got credit for the 25,000. Once it's reversed, you know, it's money that we have paid against a judgment that was reversed. Counsel, two minutes. I want to mention this business of Michael paying 100% of college expenses. That was bandied about in the record and in the order, I believe, and by the court, and there's nothing at all in the record where Mr. Anderson agreed to pay 100% of the fees. If there are no further questions, I would ask the court to reverse the case consistent with the claims we have made in our brief. Thanks, Matt. Thank you, Mr. Jeffery. Mr. Reba. Your Honor, it's Jeff Reba for Molly. I'm pleased to court, counsel. If we can, just to get this out of the way, can we deal with that? First thing I was going to talk about. Here's the deal, because I think there are two separate amounts, and Justices Carter and Whitman were on our panel when we were here eons ago, so the file has quadrupled since then. But here's our point. When the case was in front of Judge Ault back in 2009, the parties had put in heaps of affidavits for all their attorneys' fees. Judge Ault had granted 508 fees of $25,000 to Molly because the order specifically says he balanced the equities and looked at all the finances. That would not have been something he was entitled to do if this had been 508B fees. It doesn't matter. They're mandatory. So we were the ones that appealed in the 2009-2010 case. Michael did not appeal. He did not appeal that $25,000. As counsel says, he paid it. We had come up here saying we had had even more 508B fees for that part of the case, and we wanted more 508A fees because we didn't get anywhere near what we thought we were due. So I believe what you had done, and maybe there's language that talks about reversing the fee award. I don't think you really reversed the fee award from the standpoint that Michael didn't have to pay the $25,000. Our view is that $25,000 was 508 fees. We couldn't get any more 508 fees. He couldn't undo the 508 fees. Well, wait a minute. How about this? We therefore reverse the trial court's award of attorney's fees and remand for a hearing on the issue. Now, that's pretty straightforward talk. Well, it is, except you've got to look at the right part of the opinion. If I might here, try to find where it is. Because the opinion does say that Mollie was contending, this is page 18 of the opinion, to get more than the $25,000. And then over on page 20, which is 1800, the common law record, in light of the party's financial resources, the trial court did not abuse its discretion in balancing their attorney's fees and determining that Michael had the ability to pay $25,000 of Michael's fees under 508A. So I don't know why we would have been reversing that. If we're doing anything, we're saying that that's still a good award for that amount, and then we're entitled to go back and get the 508. Why would we have lost the 508 fees? But you also went back for more 508A fees, right? We had, but we didn't get them. Why, by going for more 508 fees, 508A fees, could we have lost the 508 fees that we already had? So our view is that they're not entitled to our credit, because these were totally separate fees. That's what Judge Brandt, when he looked at all the evidence, we had lawyers come in. I'm sure Judge Brandt loved that. We had lawyers, we had bills, everybody was there for a whole afternoon putting on these fees, trying to figure out what part of what all these lawyers had done was money that was expended on the items that this court's remand had said needed to be considered for finding the assets of Mr. Anderson, calculating support, doing discovery, all the things that, as Judge Brandt's order said, his propensity was prevalent and painfully prevalent about hiding and omitting assets throughout both the trials that happened in this case. So our view on that subject is that there should not be a credit, because these are totally separate fees. And Judge Brandt, he may have given us, if he thought that he had to start from scratch, we asked for way over the $24,000 he gave us. So I think it's going to be unfair to just say, you wipe that out, and he gets a credit. I think that's when Judge Brandt was looking at it from the standpoint that he was starting over with the 508B fees. Does that make sense? Or at least let's hope it does. Anyway, let me – is there so much to talk about here? Does anybody have any other questions on this before I move on? Okay, real briefly, the point about jurisdiction over Judge McCoy's ruling, all we did was we went to him. Judge Brandt retired. He denied the motions to reconsider in part, granted them in part, and then retired. And we were, I think, one of his last cases, and out the door from Peek, and he went. Now, at that point in time, we did not know that the other side was going to say that the girls' custodial accounts that they had put in their financial affidavits as zoning, and that the tax returns that the other side put into evidence showed they were paying the taxes on the dividends from their own custodial accounts, were then going to be used by the custodian, who was Michael's mother, to basically pay Michael's obligation for the next ensuing semester of college. When we found out that that's what they were doing, we had no Judge Brandt to go to anymore, so we had to go to Judge McCoy. We went in on a rule of show cause or a petition to enforce. That's perfectly legitimate. We weren't trying to modify anything. We were just trying to enforce that order. Now, of course, Judge McCoy said, I read Judge Brandt that he really said that the mother could access this money and pay Michael's 100 percent obligation. So that's why we felt like we had to appeal both rulings, because we didn't want to come up to you and get a ruling and then still have Judge McCoy's ruling hanging out in no man's land. Well, what offends your sensibilities about having those custodial accounts being used in part to pay? I mean, they were funded. Well, they paid some taxes on them. There's no crime against a kid paying for part of his own college. Is there? Well, certainly there is nothing wrong in the abstract with the court considering the child's finances, but I don't think that's what this ruling in minute detail said. When you look at it, it says the girls didn't have and weren't going to be able or weren't going to be required to pay any amount. Well, doesn't that apply in the face of the evidence if there's a $37,000 custodial account? Well, I think what Judge Brandt was saying was that that account somehow was the mother's money and that it wasn't the girl's money. So I realize that's a mixed-up sort of deal here. But either way, you lose, right? No, I don't think we do, because here's the thing. The record shows us we did say this was the girl's money, and we put on evidence. As the court is probably aware, and Judge Brandt's order says academic performance is impeccable with respect to these girls, I can guarantee you just from their records they're probably going to go to grad school. Mr. Anderson is not going to have to pay a cent. The statute cuts it off after four years. So they're going to need money for grad school. They're going to need money for cars. They've already taken out loans because they're responsible for all of the non-hard costs with their mom for all the education. So these accounts, when they were created, were not 529 accounts. There actually was other evidence of assets for the girls. I think Judge Brandt, if you read what he said, he said, Mr. Anderson, you will pay 100% of the hard costs, and Molly and the girls will pay everything else. And I don't think he meant that. I mean, why would he say, Mr. Anderson, you pay 100% of the costs, and then they could end up taking $47,000 out of each girl's account to pay his obligation? That, to me, makes no sense. If Judge Brandt wanted to do that, why wouldn't he have said, we're going to use the girls' custodial account money and then what's left, then Mr. Anderson is going to pay 100% of that? He didn't say that. I think the legal error here was, as my brief says, the case law, when the girls received the money, and they were this big when they first started getting it, that became their money automatically at that point in time. Well, in that case, but it was the custodian who spent the money, right? It was the custodian who spent the money to pay her son's obligation. Okay, but then isn't that an issue between the girls and that custodian and that part of this divorce case? I would say no because… Well, what if the custodian was the Commerce Bank, and the Commerce Bank did it? I mean, the fact that it was this guy's mother, what they're saying is the custodian breached their fiduciary duty by taking that money. I think our point is, the case is here, Judge Brandt made the order. Either he legally erred in deciding who owned the accounts, or he just had everything where he wasn't sure, and somehow they have taken some language just thrown into the order on reconsideration. When we got to the motion to reconsider, they came as we were going out the door. Well, Judge, do you mind if the order gets modified because it says that Michael shall write the checks to the university? We don't care who, any third party, I don't care who pays it, as long as it gets paid. That didn't mean that he was approving going to the girls' custodial accounts, that they're just custodians, or they have no ownership interest. My point is, the lady is out of state. I don't think it's going to encourage good relations, and it's going to just build up way more costs. There's nothing about this case that would encourage good relations. Well, but to have to go out to Pennsylvania to deal with something that should be dealt with here, all we're asking is that they put the money back. Because that's what the judge ordered. Michael didn't do it or whatever, it was the custodian, right? Well, but you have to understand, you've got to read the whole brief because there's... I know, but legally, what we're talking legally, it was the custodian who took the money out. True, but the point is, he's still under an order to pay 100%. He should still pay the 100%. If he and his mallet both pay, then let them fight the thing out. He should still pay his 100%. That's what Judge Brandt ordered. Okay, how much time do I have left? Four minutes to cover 50 things. That was one of the things I did really want to... because I knew that was going to be confusing enough to deal with. Let me just go over some of the points real quickly. I mentioned that there really is jurisdiction. I don't think that's really the whole point with Judge McCoy. It's really Judge Brandt. What did he mean and was what he... If he meant what the other side thinks he meant, was that a legal error on his part? This idea about the remand being limited to the stock proceeds, the opinion specifically says it's to remand in light of all the factors, including the stock proceeds. So it's not just looking at the stock proceeds. But even on maintenance, when we did come back, Judge Brandt said it was an easy call because the stock proceeds still presented themselves into a cash form. He had $192,000. That was sufficient, along with the other factors, to continue maintenance. This argument about receiving gifts and cars and things of that kind and non-recurring payments, I think the Supreme Court and this Court, in our opinion, said it doesn't matter whether it's non-recurring. The argument is if something's not recurring, you try to come in for a deviation. Say, don't bill that in. It only happened once. Don't bill it in. They never asked for a deviation from guidelines. So, again, this argument about how someone uses the attorney's fees, how they use the gift money, the statute doesn't say if it's used for attorney's fees, it's not included as income. I mean, you could have someone giving gifts to just pay their cell phone bill.  All right. Back to the, I guess I've already talked about the 508, maybe cross-appeal if I have a couple of minutes here. I think by looking at our brief, you'll notice, and I go into minute detail, it's at pages 12 and 13 of our brief, virtually, I mean, I would say half of this trial was going over all of the many, many, many huge lies and misrepresentations and concealments. And it's over a million dollars that we point out there, plus we had to chase out to Pennsylvania after Mike's parents because he would not disclose whether he had any interest in any trust, which we knew he probably did. We had to go out there, one minute, two minutes, we had to go out there at great expense because his parents threw up every roadblock. It was $16,000 to go and get these trust documents to show that he had, he's going to get a payday of $2.5 million at some point, and that the trustee is on the record in the testimony that he'll abide by whatever the trust says. So our point is, though, Judge Brandt said that omitting and the hiding of all this evidence, as I said earlier, painfully prevalent on this record. I've been in front of Judge Brandt. It takes a lot for him to find something painful, and he said this was painfully prevalent. And our point is, if you look at the question of interest, because they hid these accounts, we couldn't find the gift money without doing something that I've never done and probably never will again. We subpoenaed every bank, I think, within 100 miles of Peoria, and we, lo and behold, found the account that all this gift money had been going in. When this court entered the order that, and again, I'm going to ask you to look at your opinion, because we fought this out in front of Judge Brandt, too. Did you think we could go back beyond Judge All's order in 2009? It looks like in some part of the opinion it says we can only go back that far, but there were gifts way before that that we didn't know because they were being held back from us because they didn't, not only he should have been putting all this gift money in his affidavits, didn't, should have been telling us the account. We had to finally find it. It wasn't until well after this court actually ruled that we found tens, if not hundreds of thousands of gifts, money paying attorney's fees, cars, houses, and things of that kind, that this court did not know. So I would submit that in terms of interest and more attorney's fees that we're asking for in the cross-appeal and an additional payment on these pre-Judge All's 2009 gifts, it was newly discovered evidence. And I think that they had done everything that they reasonably should have done. Maybe I was the one that unreasonably decided to send 75 subpoenas out, so we found the one that had all this money in it. So I would submit that that's the thrust of our cross-appeal. We've written numerous pages, as the court is aware. And the judge, you made this argument in the trial court. Oh, yeah, I made all our arguments. What's our standard review? Is it abuse of discretion? Well, I think it's abuse of discretion on some things, and I think there's some points about the college. I think that's legal error. But I would say even if it's abuse of discretion, all he gave us was $400. He found there was all this hiding and all this concealing, and we put out evidence. That was virtually all of the discovery and the Pennsylvania proceedings and half of a six-day trial at least, and all we got was $400. So I think that is an abuse of discretion and not have gotten more on fees in that regard. So I think I'm probably out of time unless the court has any questions. No, we don't. Thank you very much, Mr. Reba, Mr. Tucker, and everybody. Two things we did not hear about are the issue of need on the attorney's fees, not a word. I don't think we really got an explanation of the $25,000 either. Now, it's not my client that got the $25,000 reversed. At Appendix A51, you will find your earlier opinion, and it's the court at page 20 of the opinion goes through the attorney's fees matter and says Michael had the ability to pay the $25,000 under 508A, adding clarification that this court thought that those fees were 508A. But then they say, and Michael did not appeal the first time. Nevertheless, Molly argues that the trial court should have awarded additional fees under 508B. You go into it, or this court goes into it, and reverses the $25,000 fees at her request. So there's no doubt that it was reversed. There's no doubt that it was at Appilee's request. And there's apparently no issue that it is paid. And I further presume there is no issue that it is a credit. But many of the things counsel is arguing about, the difficulties they may have had with the case, I don't believe are in the record. And I do want, Mr. Anderson has been castigated for a number of things in this case. But page 22 of our reply brief, I think we make it abundantly clear that neither one of these parties were a walk in the park for the courts. Then we point out with respect to attorney Saratella that the court had entered an order, let's see, Saratella came in in October, 08. On October 24th, the court entered an order setting the matter for trial December 23rd. Appilee filed a motion to continue. It was denied on November 21. And then on December 17, Saratella, who was one of her lawyers, a $4,900 lawyer I might add, filed a motion to withdraw and stated in her motion to withdraw that Molly had, without Saratella's knowledge, consent, or authority, made certain claims with the office of the attorney general in the state of Illinois, thereby implicating Judge Barra for certain acts of misdemeanors in the case. Saratella advised the judge that the attorney-client relationship had completely broken down and that Saratella had no idea what this woman is doing behind my back. Without this knowledge, I have no idea what is going on, and I think on that basis I cannot represent her. What relevance does this have for these issues? Well, the relevance, I think, Your Honor, is that, of course, Appilee has complained mightily about Mr. Anderson's conduct. Hiding stuff. Yes. A lot of hiding stuff. And this indicates that Appilee was also torpedoing the case to her advantage. This is a $4,900 item. Saratella came on. We were going to go to trial, and she withdrew. $4,900. Gone. That they're wanting reimbursement for. That's it. But how much is claimed to have been hidden? How much money hidden from disclosure that they had to track down? I haven't seen any support for that much. I can't quote the record, Your Honor. It should be in their statement of fact, and I don't believe it is. Thank you. Thank you. Thank you. Well, we've got a question. Sorry about that. Real quickly, not to beat this $25,000 credit argument, but Judge Brandt, when the case came back, gave for these 508B fees actually less than $25,000. So if they're right, we would actually owe them $3,900. We appealed with $25,000 in our pocket. How could we, by the time we get done, actually lose money? I don't think that that's metaphysically possible in view of the fact that they did not appeal. I don't think because we appealed asking for more means we lost what we already had. Well, other than the fact that the Court's prior opinion says it's vacated, it's reversed. Well, I guess it says that. I'll let you decide what to do with that. I can't change something that happened six years ago, but it seems to me if you read the whole opinion, that can't possibly mean that you took that amount away that hadn't even been acquired by the other side. The argument you made on appeal was that you deserved 508B fees. Well, and more 508A fees. We didn't say you could take away the 508A fees that we already had. And again, if they didn't appeal, that became law of the case. They didn't appeal it. That's law of the case at that point. Well, but the law of the case is that the award's reversed. The question is the definition of what the fees were. The issue on fees was, was $25,000 enough? As I recall. Right. All I would say is if and not if. And that finding is what we reversed, that it was not enough. Right. That's what I say. I think that's what the intent was. I don't know why we would have lost something that the other side didn't appeal. My point is this. Unless you asked them to vacate the award, and unless you asked them to vacate the award and say, now go back and refigure, and they said, okay, we're vacating it. Well, I don't have my brief with me here, but I suppose the court could access that as well. Do you want me to send you another copy of it? I don't think. Do you want me to do that? We've got it. Oh, yeah. Okay. My point, I guess, I'm belaboring that point maybe here, but as far as this $25,000, I can't see how we could have ended up with less. We did not. I know we wouldn't have said reverse the whole thing and start over. We said we already have that. He already paid it by that point, so why would we have said reverse something that he'd already paid? What was the argument about a credit of the $25,000 or below? In our case now. Yeah, well, they did raise that. They raised that to Judge Grant, but I think he read your first opinion the way I read it, which was that the language about reversing really didn't mean the whole thing was gone. I'm asking what was explicitly stated about it once it was raised by the trial court. I know it's probably, let me think, I know there's transcripts of everything, because I think they actually went, there should be a motion to reconsider hearing on the fee award, and I think we talked about it there, and I can't cite you to a page, but I know Judge Grant did, they raised it, and they said, you know, where's our credit? He said you don't get one because he adopted my argument that was law of the case and everything I've already said to you today. So I guess my final point on that is, and I hate to argue against myself, but if for some reason you think the thing was somehow bollocksed up by all of us, me included and Judge Grant, we at least shouldn't, I guess that would have to go back and get sorted out somehow, because I really think Judge Grant wanted us to have the $25,000 and the $24,000, didn't want us to just have one or the other. That's my view of what he said on the record. Final point is... Well, the judge ordered, that was the $17,000, or $22,000, right? No, that was the $24,000. No, for the B fees, that was the $24,000. Right. And then when we got to the trial, he gave $17,000 of discretionary fees. That included 503A. 508A, right. And that included, and I don't have the time to go through all of our cross-appeal arguments. We think we should get more. But my final point, and I think Justice Carter has already kind of made it for me, and that is this whole idea of them extracting something about what happened in some other realm years before we were in front of Judge Grant is just a sordid and ridiculous attempt to try to find something in 15 years of litigation to say that Molly did something bad or untoward. They never argued that. They never introduced any evidence of it. Judge Grant, unless he wanted to read 18 volumes of common law record, would never have known about that. They never mentioned it until we made our brief and listed the $1,045,318 of nondisclosures on top of all the trust money that we had to go to Pennsylvania to find because that wouldn't be disclosed either. So unless the Court has any questions, I thank the Court for its time. All right. Thank you. Thank you. Thank you both for your argument today. We'll take this matter under advice and get back to you with a written disposition within a short time. We'll now take short recess for the panel.